# Illinois Official Reports

## Appellate Court

***People v. Connors*, 2017 IL App (1st) 162440**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRIS CONNORS, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-16-2440 |
| Filed | September 26, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 38013273; the Hon. Edward King, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Thomas C. Brandstrader, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and Iris G. Ferosie, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE NEVILLE delivered the judgment of the court, with opinion.<br>Justices Pucinski and Hyman concurred in the judgment and opinion. |

¶ 1    The trial court found Chris Connors guilty of driving under the influence of alcohol. The court held the bench trial after it extended the speedy trial term for 60 days so that the prosecutor could present his one witness. Connors argues on appeal that the trial court should have dismissed the charges because the State violated his right to a speedy trial. We find that the prosecutor did not act with due diligence, and therefore, we vacate the conviction.

¶ 2                                    BACKGROUND

¶ 3    On November 5, 2013, around 12:30 a.m., Trooper Dustin Forney of the Illinois State Police, while driving on the Edens Expressway, saw a black sedan veer to the left across the lane markings and then to the right so that half the car crossed the fog line. Forney followed the car for about a mile before he activated his lights and directed the sedan's driver to pull over. The driver, Connors, failed the sobriety tests Forney administered. Connors refused to take a breathalyzer test. Prosecutors charged Connors with driving under the influence of alcohol.

¶ 4    Connors challenged the arrest, and the parties participated in discovery. On September 24, 2014, Connors answered ready and demanded a speedy trial. The prosecutor asked the court to continue the case to December 12, 2014, and the court granted the request. On December 12, 2014, Connors again answered ready, and the State answered not ready, as Forney had not come to court. The court granted the State another continuance and again set the trial for the date the prosecutor requested, January 29, 2015. Connors again answered ready on January 29, 2015, and the State sought another continuance because Forney did not come to court. The State asked the court to set February 27, 2015, as the trial date, noting that February 27 fell 158 days after Connors demanded trial. The court again granted the requested continuance.

¶ 5    On February 27, an associate of Connors's attorney told the court that Connors's attorney could not come to court and asked for a continuance. The associate specifically requested a status date, not a trial date, so that Alcohol/Drug Assessment Services (ADAS) could evaluate Connors and the parties could use that evaluation to help arrange a plea. The court set a status date of March 9, 2015. The court granted Connors subsequent continuances to April 8, May 11, June 5, July 23, August 14, and September 29, 2015, all for status hearings, all awaiting an ADAS evaluation.

¶ 6    At the status hearing on September 29, Connors and his attorney came to court and asked the court to set the matter for trial. The court set the matter for a bench trial on October 21, 2015. On October 21, 2015, Connors answered ready for trial. Because Forney did not come to court, the prosecutor answered not ready. The prosecutor explained:

"I have been trying to get ahold of the trooper. Unfortunately, the Illinois State Police doesn't have the same system with the Chicago Police, where there is an assembly room where they actually check in.

I'm kind of—I am, I would say[,] communicating with him through a third person, I suppose, to try to find a good date. So, I mean, I would—basically, I would just—right now I'm trying to confirm.

***

*** I would be asking a Motion State to December 1st. However, that puts us pas[t] our term date. Just to provide history:

*** [O]n February 27th, this case was at term. *** We answered ready and defendant answered not ready. *** It went Motion Defendant for status to March 9th, 2015."

¶ 7   The prosecutor recited Connors's seven requests for continuances so that ADAS could evaluate him and the parties could work toward a plea bargain. The prosecutor requested an extension of 60 days to the speedy trial term. Defense counsel objected, pointing out that at the previously set trial dates in 2014, Forney failed to appear and the prosecutor offered no explanation for his absence. The prosecutor said,

"we subpoenaed the trooper to be here. Unfortunately, we don't have the same system of communicating with him.

***

But as far as due diligence, Judge, *** I have been exchanging communications with an Illinois State Police Trooper, that I know pretty well, in making efforts to try to reach out to this trooper to assure that December 1st is a good date for him.

Unfortunately, I haven't been able to do that."

¶ 8   The court extended the speedy trial term for 60 days and set the case for trial on December 1, 2015.

¶ 9   Connors filed a motion to dismiss the charges based on the violation of his right to a speedy trial. The trial court heard the motion on December 1 and 3, 2015. Defense counsel pointed out that insofar as the court based the extension on Connors's request for an ADAS evaluation, the court should have limited the extension to 21 days under subsection (f) of the speedy trial statute. See 725 ILCS 5/103-5(f) (West 2014). For the court to give the prosecution a 60-day extension, the prosecution needed to show due diligence in its efforts to produce Forney for trial. See 725 ILCS 5/103-5(c) (West 2014). Connors argued that the prosecution had not shown due diligence.

¶ 10   The trial court found that even after Connors demanded trial following the ADAS evaluation, "on October 21st *** every indication was in a practical sense to the Court that it was going to be disposed of by a negotiated plea." The trial court found that the prosecution had shown due diligence. The court denied the motion to dismiss the charges.

¶ 11   At the bench trial, Forney testified about Connors's erratic driving and the coordination tests that Connors failed. Connors stipulated that he told Forney he had drunk four beers, and that he had "nodded off" while driving, which caused him to drive the car across the fog line. The court found Connors guilty of driving under the influence of alcohol and sentenced him to five days in jail and payment of fines, fees, and costs totaling $2274. Connors now appeals.

¶ 12                                                    ANALYSIS

¶ 13   Connors challenges only the denial of his motion to dismiss the charges on speedy trial grounds. The State argues that Connors has not supplied a sufficient record for this court to review the issue because the record does not include Connors's written motion to dismiss. "The sufficiency of the record to address a claim of error turns on the question presented on appeal." *In re Marriage of Abu-Hashim*, 2014 IL App (1st) 122997, ¶ 15. The record on appeal includes a transcript of the argument on the motion to dismiss, and the trial court explained on the record its reasons for finding that the prosecution acted with due diligence. We find that

Connors has supplied a sufficiently complete record for us to review the speedy trial issue on its merits. See *People v. Looney*, 46 Ill. App. 3d 404, 409 (1977).

¶ 14 The prosecution also contends that Connors violated Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2017) because Connors cited in his brief only the speedy trial statute and three cases for general propositions about the statutory right to a speedy trial. Connors relies primarily on the interpretation of the statute, and therefore, we find no violation of Rule 341(h)(7). See *People v. Jung*, 192 Ill. 2d 1, 12-13 (2000) (Freeman, J., specially concurring, joined by Miller and McMorrow, JJ.).

¶ 15 The parties agree that only subsection (c) of the speedy trial statute could justify the 60-day extension the trial court granted. Subsection (c) provides:

"If the court determines that the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later day the court may continue the cause on application of the State for not more than an additional 60 days." 725 ILCS 5/103-5(c) (West 2014).

¶ 16 The trial court has discretion to grant an extension under subsection (c), and this court will not disturb the trial court's decision unless the trial court abused its discretion. *People v. Terry*, 312 Ill. App. 3d 984, 990 (2000). "The State bears the burden of proof on the question of due diligence." *People v. Battles*, 311 Ill. App. 3d 991, 997-98 (2000). "The test of due diligence is whether the State began efforts to locate its witness in sufficient time to secure [his or] her presence before the speedy trial term expired." *People v. Exson*, 384 Ill. App. 3d 794, 799 (2008). We "examine the entire record as it existed at the time the trial court considered the motion for continuance." *Terry*, 312 Ill. App. 3d at 990.

¶ 17 The record shows that after Connors answered ready for trial, the court continued the case to December 12, 2014, and then to January 29, 2015, dates the prosecutor specifically requested. On both of those dates, Connors came to court ready for trial, Forney did not come to court, and the prosecution offered no explanation for his absence. When Connors first requested a delay, on February 27, 2015, he specifically told the prosecutor and the court that he sought an ADAS evaluation with the objective of negotiating a plea. Thus, the prosecution knew Forney did not need to come to court for any of the several status dates Connors sought while he awaited an ADAS evaluation. Following the evaluation, the negotiations failed and defense counsel informed the prosecutor and the court that he needed a date for trial, not for status on negotiations. Again, defense counsel and the court accepted the date the prosecutor sought as the date for trial. The court continued the case, by agreement of the parties, to the new trial date of October 21, 2015.

¶ 18 On October 21, 2015, Connors again came to court ready for trial, and Forney did not come to court. This time the prosecutor explained that he had tried to contact Forney, but he only managed to "communicat[e] with him through a third person," and he was still "trying to confirm" a date on which Forney could come to court. Thus, the prosecutor admitted that more than a year after the court first set the case for trial and Connors answered ready for trial, after three trial dates set specifically at the prosecutor's request for which the prosecution's single witness failed to appear, and knowing that the full 160 days had run on Connors's speedy trial term—the prosecutor still had not found out how to contact his one witness so that he could set a date on which his witness would come to court. The prosecutor did not seek to present the testimony of a person with no fixed job or address, or one who tried to avoid trials. The witness

- 4 -

who failed to appear continued to work at his job as a state trooper, a job that he had held since the prosecutor first assumed responsibility for the case about two years before the hearing on October 21, 2015.

¶ 19 The trial court's finding that the State exercised due diligence is against the manifest weight of the evidence because the evidence shows that the prosecutor did not make the effort necessary to bring his witness to court in sufficient time to secure his presence before the speedy trial term expired. The prosecutor did not say exactly when he started to make an effort to find Forney through his third person contact. He said only that state troopers used a different system than Chicago police. He did not tell the court when he learned that state troopers used a different system, or what steps he had taken to determine how to get a state trooper to come to court.

¶ 20 In *People v. Shannon*, 34 Ill. App. 3d 185 (1975), the prosecutor sought a continuance of 35 days beyond the speedy trial term so that the State could present the testimony of two police officers who were on vacation on the trial date set at the end of the speedy trial term. The trial court granted the continuance, and after the trial court found Shannon guilty, Shannon challenged the speedy trial ruling on appeal. The appellate court vacated the conviction due to the violation of the right to a speedy trial. The *Shannon* court said:

> "[W]e are impressed by the fact that it does not appear that any effort whatsoever was made to ascertain the availability of the two police eyewitnesses until the afternoon four days prior to trial. *** In our opinion, these belated efforts to locate these essential witnesses were not sufficient to constitute due diligence on the part of the State. This conclusion is particularly supported by the fact that the vacation schedules of these two witnesses were in existence months before defendant was arrested." *Shannon*, 34 Ill. App. 3d at 187.

¶ 21 We find the lack of diligence here more egregious than that in *Shannon*. The prosecutor did not know whether Forney had gone on vacation. Almost two years after he took responsibility for the case, and after Connors had answered ready for trial on multiple trial dates, with delays totaling 160 days solely due to the prosecution's inability to bring the state trooper to court, the prosecutor did not know how to get in touch with Forney to find out when he could get to court. As the court said in *Exson*, 384 Ill. App. 3d at 800, "Whatever 'due diligence' means, it cannot be defined as ignoring or doing nothing about a statutory requirement." For a long time, the prosecution here did nothing to find out how to bring Forney to court.

¶ 22 We hold that the trial court abused its discretion when it granted the prosecution a 60-day extension beyond the speedy trial term when the prosecution had not acted with due diligence. "The only possible remedy for deprivation of [speedy trial] rights is discharge." *Shannon*, 34 Ill. App. 3d at 188.

¶ 23 In this case, because of the violation of Connors's right to a speedy trial, we find ourselves obliged to leave Connors's serious offense unpunished. We implore prosecutors to take drunk driving charges seriously. Once a defendant accused of drunk driving demands trial, the prosecutor must take steps to bring to court all witnesses the prosecution needs to prove its case against the defendant. After the full 160 days had run on Connors's speedy trial term, the prosecutor did not act with the diligence needed to justify the 60-day extension of the speedy trial term. We further note that the prosecutor here could have sought instead a 21-day extension of the speedy trial term, under subsection (f) of the speedy trial statute, and for that extension, the prosecution did not need to show due diligence. See 725 ILCS 5/103-5(f) (West

2014). Therefore, because the prosecutor did not show the diligence required for the extension the court granted, we reverse the conviction.

¶ 24                                CONCLUSION

¶ 25      After three continuances of the trial dates the prosecutor specifically requested, and after the full 160 days had run on Connors's speedy trial term, the prosecutor had not found out how to contact the prosecution's sole witness, a state trooper. We find that the trial court's finding that the prosecutor acted with due diligence is against the manifest weight of the evidence, and therefore, we hold that the trial court abused its discretion when it granted the prosecution's motion for a 60-day extension of the speedy trial term. We reverse the conviction due to the violation of Connors's right to a speedy trial, and we remand with directions to enter an order discharging Connors.

¶ 26      Reversed and remanded with directions.